UNITED STATES of America,
Plaintiff,

v.

BEATRICE FOODS COMPANY,
Defendant.

No. 21317.

United States District Court
W. D. Missouri, W. D.

Dec. 17, 1963.

———◆———

F. Russell Millin, U. S. Dist. Atty., William A. Kitchen, Asst. U. S. Dist. Atty., Kansas City, Mo., for plaintiff.

Michael J. Bogutski, Kansas City, Mo., for defendant.

JOHN W. OLIVER, District Judge.

This prosecution, by way of a twenty-four count information, for alleged violations of Section 608c(14) of Title 7 United States Code, has been submitted on stipulation of the parties to the Court as the trier of the facts. Inasmuch as all facts are stipulated, there obviously can be no dispute about them. Our formal findings will be stated separately hereinafter.

Defendant divides its memorandum brief into four sections. Defendant inquires (I) whether "Milk Marketing Order No. 13 [is] invalid as a matter of law"; (II) whether "Market Order No. 13 [was] violated by the timely filing of reports required by the order, which reports contained false or inaccurate information"; (III) whether "assuming that the making of false reports constitutes a violation of 7 U.S.C.A., Section 608c(14), were the Notice of Producer Addition reports cited in Counts I through XII of the information false?"; and (IV) whether "assuming that the making of a report containing false or incorrect information is a violation of the marketing order, are any of the 24 counts of the information bad for duplicity?"

Lehigh Valley Coop Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed. 345 (1962) is the single case cited by the defendant. That case, together with United States v. Rock Royal Coop, 307 U.S. 533, 59 S.Ct. 993, 83 L. Ed. 1446 (1939); United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); United States v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290 (1945); Panno v. United States, (9 Cir., 1953) 203 F.2d 504; and Chapman v. United States, (8 Cir., 1943) 139 F.2d 327, long ago laid to rest any real question that might concern the validity of orders such as Order No. 13 involved in this case, or any real question of whether reports containing false or inaccurate information are violations of Order No. 13, within the meaning of Section 608c(14). Our findings of fact have been made in accordance with the principles announced in the cases cited and, as stated above, in accordance with the stipulation of the parties.

Defendant's basic legal argument is that "the provisions of the order relating to the making of reports * * * removes any implication that the timely submission of reports containing erroneous information is a violation of the order, and the statute under which defendant is charged"; that "the order [as distinguished from the statute] provides only for a civil liability in such cases and that liability has been satisfied"; that "the term 'fraudulently' used in this information is mere surplusage";[1] and that if this defendant did in fact fraudulently submit false reports, it should have been charged under Title 18 U.S.C.A. § 1001.

■ We quite agree that the use of the word "fraudulently" in the information was surplusage; but we do not agree that recognition of that proposition requires a determination either that

this defendant be acquitted; or, that it is subject only to prosecution under Section 1001; or, that its only liability is civil. The question of whether the Government wanted to prosecute also under other statutes is not the choice of this Court. We deal only with the prosecution before us.

Section 608c(14) of Title 7 U.S.Code, in its applicable portion provides that:

"(14) Any handler subject to an order issued under this section, or any officer, director, agent, or employee of such handler, who violates any provision of such order (other than a provision calling for payment of a pro rata share of expenses) shall, on conviction, be fined not less than $50 or more than $500 for each such violation, and each day during which such violation continues shall be deemed a separate violation: * * *."

Our jurisdiction over prosecutions instituted to enforce that section is vested by Section 1355 of Title 28 U.S.Code. The latter section provides that:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."

The general thrust of defendant's argument seems to be that Section 608c (14) can not be enforced and that a fine under that section may not be imposed unless the Congress had included a specific criminal intent as an element of the offense.

We pointed out recently in footnote 2 of our memorandum in United States v. Jaben, 224 F.Supp. 603, 1963, that "the inclusion or the exclusion of * * * words of purchase * * * such words as 'intentional,' 'wilful,' 'knowing-

---

1. The above quotation is from page 5 of defendant's brief. In another place in its brief (page 10) defendant reiterates this phase of its basic argument by stat-

ing that "a showing of fraud is not an essential element of the offense" and that "the allegation of fraud should be stricken from all counts as surplusage".

ly,' 'fraudulent,' or 'malicious' * * * is not the single criteria of judgment as to whether specific intention is or is not an essential element of a federal crime."

■ It is clear that the Congress in its enactment of Section 608c(14) did not specifically require any finding of guilty intent as an element of the offense. Nothing in the Constitution or elsewhere requires that the Congress must include intent in its definition of certain particular offenses, including offenses that fall in the category here involved, against the United States. In regard to Section 608c(14) we do not think that it can be said that Congress intended that any proof be required in a prosecution instituted under that section beyond proof of the elements set forth in the specific language of that statute.

■ Section 608c(14) neither states any requirement of specific intent, nor does it incorporate any concept of a long established common law crime that could be said to require proof of any specific intent. The type of offense defined in Section 608c(14) is to be distinguished from the type of offense involved in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The type of offense here involved is in the category that depends on no mental element but rests entirely upon the "forbidden acts or omissions", to borrow the words of Morissette (page 253 of 342 U.S., page 244 of 72 S.Ct., 96 L.Ed. 288).

In regard to the Section 608c(14) offenses, which have no common law origin, Morissette noted that "a century-old but accelerating tendency, discernible both here and in England [has called], into existence new duties and crimes which disregard any ingredient of intent". It further noted that the complexities of modern life "have engendered increasingly numerous and detailed regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare". Section 608c(14) falls into such a category. See and compare the rationale of Securities and Exchange Commission v. Capital Gains Research Bureau, 84 S.Ct. 275 (1963).

More importantly, Morissette added that "lawmakers, whether wisely or not, have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions." It is such a prosecution with which we deal in this case. In light of the principles stated, we accordingly make the following:

## FINDINGS OF FACT

1. Defendant Beatrice Foods Company is a handler doing business at Topeka, Kansas, in the Greater Kansas City Milk Marketing Area. As such at all times mentioned in the information filed herein it was subject to the terms of Order No. 13 which regulated the handling of milk in the Greater Kansas City Milk Marketing Area.

2. Pursuant to Order No. 13, defendant Beatrice Foods Company was required to file with the Market Administrator certain reports, to-wit: Producer Addition Reports, Reports of Purchases from Producers, Reports of Receipts and Utilization and Payroll Reports.

3. That defendant Beatrice Foods Company on or about October 5, 1959, filed a Producer Addition Report which falsely stated that Dean Wilson was a producer as of September 1, 1959, under the terms of Order No. 13.

4. That defendant Beatrice Foods Company on or about October 5, 1959, filed a Producer Addition Report that falsely stated that John A. Yoder, Jr. was a producer as of September 15, 1959, under the terms of Order No. 13.

5. That defendant Beatrice Foods Company on or about October 5, 1959, filed a Producer Addition Report that stated that Lewis Ermel and Son was a producer as of September 15, 1959, under the terms of Order No. 13.

6. That defendant Beatrice Foods Company on or about October 5, 1959,

filed a Producer Addition Report that falsely stated that Leon Benjamin was a producer as of September 13, 1959, under the terms of Order No. 13.

7. That defendant Beatrice Foods Company on or about November 6, 1959, filed a Producer Addition Report that falsely stated that Virgil Hermreck was a producer as of October 1, 1959, under the terms of Order No. 13.

8. That defendant Beatrice Foods Company on or about November 6, 1959, filed a Producer Addition Report that falsely stated that Charles Coon was a producer as of October 1, 1959, under the terms of Order No. 13.

9. That defendant Beatrice Foods Company on or about November 6, 1959, filed a Producer Addition Report that falsely stated that Richard Schmitz was a producer as of October 1, 1959, under the terms of Order No. 13.

10. That defendant Beatrice Foods Company on or about November 6, 1959, filed a Producer Addition Report that falsely stated that John Pock was a producer as of October 1, 1959, under the terms of Order No. 13.

11. That defendant Beatrice Foods Company on or about November 6, 1959, filed a Producer Addition Report that falsely stated that Harley Lasley was a producer as of October 1, 1959, under the terms of Order No. 13.

12. That defendant Beatrice Foods Company on or about November 6, 1959 filed a Producer Addition Report that falsely stated that Rlyn Wiley was a producer as of October 1, 1959, under the terms of Order No. 13.

13. That defendant Beatrice Foods Company on or about December 5, 1959, filed a Producer Addition Report that falsely stated that Eldon Zabel was a producer as of November 1, 1959, under the terms of Order No. 13.

14. That defendant Beatrice Foods Company on or about January 6, 1960 filed a Producer Addition Report that falsely stated that Ben Teske was a producer as of December 2, 1959, under the terms of Order No. 13.

15. That defendant Beatrice Foods Company on or about October 7, 1959, filed a Report of Purchases for the month of September, 1959, which report falsely stated that the quantities of milk listed thereon as received from Dean Wilson, John A. Yoder, Lewis Ermel and Son, and Leon Benjamin was milk received from producers and subject to the provisions of said Order No. 13.

16. That defendant Beatrice Foods Company on or about November 7, 1959, filed a Report of Purchases for the month of October, 1959, which report falsely stated that the quantities of milk listed thereon as received from Dean Wilson, Virgil Hermreck, Harley Lasley, Richard Schmitz, John Pock, Lewis Ermel and Son, Leon Benjamin, Charles Coon, John A. Yoder, Jr., and Rlyn Wiley was milk received from producers and subject to the provisions of said Order No. 13.

17. That defendant Beatrice Foods Company on or about December 7, 1959, filed a Report of Purchases for the month of November, 1959, which report falsely stated that the quantities of milk listed thereon as received from Lewis Ermel and Son, Richard Schmitz, Rlyn Wiley and Eldon Zabel was milk received from producers and subject to the provisions of said Order No. 13.

18. That defendant Beatrice Foods Company on or about January 7, 1960, filed a Report of Purchases for the month of December, 1959, which report falsely stated that the quantities of milk listed thereon as received from Lewis Ermel and Son, Ben Teske and Richard Schmitz was milk received from producers and subject to the provisions of said Order No. 13.

19. That defendant Beatrice Foods Company on or about October 7, 1959, filed a Report of Receipts and Utilization for the month of September, 1959, which report falsely indicated the milk received from Dean Wilson, John A. Yoder, Jr., Lewis Ermel and Son and Leon Benjamin was milk received from "producers" under the terms of Order No. 13.

20. That defendant Beatrice Foods Company on or about November 7, 1959,

filed a Report of Receipts and Utilization for the month of October, 1959, which report falsely indicated the milk received from Dean Wilson, Virgil Hermreck, Harley Lasley, Richard Schmitz, John Pock, Lewis Ermel and Son, Leon Benjamin, Charles Coon, John A. Yoder, Jr., and Rlyn Wiley was milk received from "producers" under the terms of Order No. 13.

21. That defendant Beatrice Foods Company on or about December 7, 1959, filed a Report of Receipts and Utilization for the month of November, 1959, which report falsely indicated the milk received from Lewis Ermel and Son, Richard Schmitz, Rlyn Wiley and Eldon Zabel was milk received from "producers" under the terms of Order No. 13.

22. That defendant Beatrice Foods Company on or about January 7, 1960, filed a Report of Receipts and Utilization for the month of December, 1959, which report falsely indicated the milk received from Lewis Ermel and Son, Rlyn Wiley, Ben Teske and Richard Schmitz was milk received from "producers" under the terms of Order No. 13.

23. That defendant Beatrice Foods Company on or about October 15, 1959, filed a Milk Producer Pay Register or Payroll Report for the month of September, 1959, which report stated that Dean Wilson, John A. Yoder, Jr., Lewis Ermel and Son and Leon Benjamin are "producers" under the terms of Order No. 13.

24. That defendant Beatrice Foods Company on or about November 18, 1959, filed a Milk Producer Pay Register or Payroll Report for the month of October, 1959, which report stated that Virgil Hermreck, Harley Lasley, Richard Schmitz, John Pock, Lewis Ermel and Son, Leon Benjamin, Charles Coon, John A. Yoder, Jr., and Rlyn Wiley are "producers" under the terms of Order No. 13.

25. That defendant Beatrice Foods Company on or about December 16, 1959, filed a Milk Producer Pay Register or Payroll Report for the month of November, 1959, which report stated that

Lewis Ermel and Son, Richard Schmitz, Rlyn Wiley and Eldon Zabel are "producers" under the terms of Order No. 13.

26. That defendant Beatrice Foods Company on or about January 15, 1960, filed a Milk Producer Pay Register or Payroll Report for the month of December, 1959, which report stated that Lewis Ermel and Son, Rlyn Wiley, Ben Teske and Richard Schmitz are "producers" under the terms of Order No. 13.

27. The filing of the reports specified in paragraphs 3 through 26, inclusive, of these findings of fact constitute violations of Order No. 13 within the meaning of Section 608c(14) of Title 7 United States Code, in that (a) all reports submitted admittedly contained inaccurate information (see paragraph 36 of the stipulation); (b) all reports were in fact false and inaccurate in that defendant Beatrice Foods Company reported that various dairy farmers named in the Notice of Producer Addition Form PA-1 named in the first twelve counts of the information were in fact Grade A producers when those particular persons in fact were not fully qualified as such (see paragraph 26(a) of the stipulation); (c) the wrongful addition and inclusion of those allegedly qualified producers, who were not in fact qualified, necessarily required the filing of additional false and inaccurate reports which were reflected by the Report of Purchases from Producers, involved in Counts 13 through 16, inclusive, by the Handlers Report of Receipts and Utilization, involved in Counts 17 through 20, and by the Milk Producers Pay Register, involved in Counts 21 through 24; (d) all of which resulted in the total overpayment to the improperly added unqualified producers of the sum of $5,336.58 from the Producers Settlement Fund, none of which was remitted by defendant until after the information in this case was filed on May 9, 1962. In regard to the latter fact, it should be added, as stipulated in paragraph 26(b) and 26(c), that the $5,336.58 was in fact remitted to the Market Administrator on June 4, 1962.

## CONCLUSIONS OF LAW

1. We incorporate by this reference what we have said above in our Memorandum Opinion as a part of our formal conclusions of law.

2. We further conclude that the requirements that reports be filed carried with it the duty and obligation that the reports be accurate and that they not contain false and inaccurate information.

3. We further conclude that defendant Beatrice Foods Company is guilty as charged in all twenty-four counts of the information.